# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---------------------------------------------------------------------------------------------------------------

ESTATE OF MICHAEL EDWARD BELL, by
Special Administrator Michael Martin Bell,
3317 13th Place
Kenosha, WI 53144,

KIM MARIE BELL
8310 14th Avenue
Kenosha, WI 53143,

MICHAEL MARTIN BELL
3317 13th Place
Kenosha, WI 53144,

SHANTAE BELL
8310 14th Avenue
Kenosha, WI 53143

       Plaintiffs,

v.

OFFICER ERICH R. STRAUSBAUGH
1000 55th Street
Kenosha, WI 53140,

OFFICER ERICH S. WEIDNER
1000 55th Street
Kenosha, WI 53140

LIEUTENANT DAVID H. KRUEGER
1000 55th Street
Kenosha, WI 53140,

OFFICER ALBERT B. GONZALES
1000 55th Street
Kenosha, WI 53140,

Civil Action No. 05 - C - 1176

## COMPLAINT



KENOSHA POLICE DEPARTMENT
c/o CHIEF OF POLICE DANIEL C. WADE
1000 55th Street
Kenosha, WI 53140,

CITY OF KENOSHA
625 52nd Street
Room 105
Kenosha, WI 53140,

Defendants.

---

NOW COME the above-named plaintiffs, by their attorneys, Cannon & Dunphy, S.C., and complain against the above-named defendants, and for their claims for relief, allege and show to the court as follows

## COMPLAINT

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. The court has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331, and has pendant jurisdiction over all state claims under 28 U.S.C. § 1367.

## PARTIES

2. Michael Edward Bell was born on March 3, 1983. Prior to his death on November 9, 2004, he was an adult citizen and resident of the State of Wisconsin residing at 8310 14th Avenue, Kenosha, WI 53143, and was the son of the plaintiffs, Kim Marie Bell and Michael Martin Bell and the brother of Shantae Bell. On December 30, 2004, Michael Martin Bell was appointed Special Administrator of the Estate of Michael Edward Bell for purposes of pursuing a claim on behalf of the Estate in this action.

3. That at the present time, the plaintiff, Kim Marie Bell, is an adult citizen and resident of the State of Wisconsin, residing at 8310 14th Avenue, Kenosha, WI 53143. Kim Marie Bell is the mother of Michael Edward Bell.

4. That at the present time, the plaintiff, Michael Martin Bell, is an adult citizen and resident of the State of Wisconsin, residing at 3317 13th Place, Kenosha, WI 53144. Michael Martin Bell is the father of Michael Edward Bell.

5. That at the present time, the plaintiff, Shantae Bell, is an adult citizen and resident of the State of Wisconsin, residing at 8310 14th Avenue, Kenosha, WI 53143. Shantae Bell is the sister of Michael Edward Bell.

6. The defendant, Officer Erich R. Strausbaugh, is an adult citizen and resident of the City and County of Kenosha, employed as a police officer for the City of Kenosha Police Department, located at 1000 55th Street, Kenosha, WI 53140. That at all times material hereto, the defendant, Officer Erich R. Strausbaugh, was acting within the scope of his employment as a police officer for the City of Kenosha Police Department.

7. The defendant, Officer Erich S. Weidner, is an adult citizen and resident of the City and County of Kenosha, employed as a police officer for the City of Kenosha Police Department, located at 1000 55th Street, Kenosha, WI 53140. That at all times material hereto, the defendant, Officer Erich S. Weidner, was acting within the scope of his employment as a police officer for the City of Kenosha Police Department.

8. The defendant, Officer Albert B. Gonzales, is an adult citizen and resident of the City and County of Kenosha, employed as a police officer for the City of Kenosha Police Department, located at 1000 55th Street, Kenosha, WI 53140. That at all times material

hereto, the defendant, Officer Albert B. Gonzales, was acting within the scope of his employment as a police officer for the City of Kenosha Police Department.

9. The defendant, Lieutenant David H. Krueger, is an adult citizen and resident of the City and County of Kenosha, employed as a police officer for the City of Kenosha Police Department, located at 1000 55th Street, Kenosha, WI 53140. That at all times material hereto, the defendant, Lieutenant David H. Krueger, was acting within the scope of his employment as a police officer for the City of Kenosha Police Department.

10. At all relevant times herein, the defendants, Officers Erich R. Strausbaugh, Erich S. Weidner, Albert B. Gonzales and Lieutenant David H. Krueger, were each a "person" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Michael Edward Bell of his constitutional rights.

11. The defendant, Chief of Police Daniel C. Wade, was, at all times material hereto, an adult citizen and resident of the City and County of Kenosha, and employed as the Chief of Police for the City of Kenosha Police Department, located at 1000 55th Street, Kenosha, WI 53140. In that capacity, he was the chief policy maker in the City of Kenosha Police Department at all times material hereto and, as such, was the commanding officer of defendants Officers Erich R. Strausbaugh, Erich S. Weidner, Albert B. Gonzales and Lieutenant David H. Krueger, and was responsible for the training, supervision and conduct of defendants, Officers Erich R. Strausbaugh, Erich S. Weidner, Albert B. Gonzales and Lieutenant David H. Krueger, as more fully set forth below.

12. The defendant, City of Kenosha, was at all times material hereto, a municipality, organized pursuant to Chapter 59 of the Wisconsin Statutes, with offices of the City Clerk located at 625 52nd Street, Room 105, Kenosha, WI 53140.

13. That the defendant, City of Kenosha, has a legal obligation under sec. 895.46 to indemnify each of the defendant police officers and to satisfy any judgment entered against them if it is determined that the defendant police officers were acting within the scope of their employment at all times material hereto.

14. Plaintiffs sue each and all defendants in both their individual and official capacities.

## CONSTITUTIONALLY PROTECTED INTERESTS

15. As a citizen of the United States, Michael Edward Bell is protected against use of excessive and deadly force without cause or justification as guaranteed by the Fourth Amendment and against conduct by state actors done with malice, reckless disregard or deliberate indifference to his rights under the Fourteenth Amendment to the United States Constitution.

## GENERAL ALLEGATIONS AGAINST ALL DEFENDANTS

16. The conduct of the individual defendants as hereinafter described was done with malice or reckless disregard or with deliberate indifference to the rights of Michael Edward Bell in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## CLAIM OF ESTATE OF MICHAEL EDWARD BELL FOR INJURIES

17. The Estate of Michael Edward Bell hereby incorporates all preceding paragraphs as if fully set forth herein.

18. Michael Edward Bell suffered injury and death as a result of the hereinafter described actions of the named defendants. That said actions were performed by individual defendants but each action was immediately connected with the injuries and death of Michael Edward Bell and was part of creating an unreasonably threatening situation as part of defendants' unconstitutional seizure of Michael Edward Bell.

## UNLAWFUL STOP

19. On November 9, 2004, at or about 2:00 a.m., Michael Edward Bell drove a 1997 Ford Explorer from the Harbor Side Inn to the 8300 block of 14th Avenue in the City of Kenosha. Mr. Bell drove the Explorer with the permission of its owner and with its owner as a passenger in the vehicle.

20. During the drive from the Harbor Side Inn to the 8300 block of 14th Avenue, Michael Edward Bell drove the Explorer in compliance with all applicable Rules of the Road.

21. Michael Edward Bell drove the Explorer southbound on 14th Avenue and brought the vehicle to a full and complete stop at the stop sign on the corner of 80th Street and 14th Avenue. Michael Edward Bell then continued southbound on 14th Avenue and brought the vehicle to a full and complete stop in front of his home at 8310 14th Avenue. At no time did Michael Edward Bell exceed the posted speed limit while on 14th Avenue nor did any officers observe him violate the applicable Rules of the Road. At no time did

Michael Edward Bell drive the Explorer in any way that would give an objectively reasonable officer a reasonable suspicion that Michael Edward Bell had been engaged or was about to engage in any criminal activity.

22.     The defendant Strausbaugh had parked his squad car in the 8000 block of 14th Avenue at or about 1:30 a.m. The defendant Weidner had parked his squad car directly behind defendant Strausbaugh's squad car.     Said defendants remained there until approximately 2:10 a.m. when they observed Michael Edward Bell's proper and lawful operation of the Explorer. In spite of said proper and lawful operation, defendant Strausbaugh states in his official report that "I was going to pull the driver over." In order to accomplish his stated objective, defendant Strausbaugh activated his emergency squad lights and pursued Michael Edward Bell southbound on 14th Avenue with the intent of stopping Michael Edward Bell.

23.     Michael Edward Bell stopped the Explorer on the west side of 14th Avenue in front of the residence at 8314 14th Avenue.

24.     The defendant Weidner, who was operating his own squad car at all times material hereto, followed defendant Strausbaugh southbound on 14th Avenue and brought his squad car to a stop next to defendant Strausbaugh's squad car on 14th Avenue to assist in stopping Michael Edward Bell.

25.     Neither defendant Strausbaugh nor defendant Weidner had any reasonable suspicion that Michael Edward Bell was engaged in or about to engage in any criminal activity at the time they pursued and stopped the Explorer on 14th Avenue.

26.     That when Michael Edward Bell demanded to know why he was being arrested, an unidentified officer, either defendant Strausbaugh or Weidner, was heard on a Kenosha Police Department ("KPD") tape recording telling Michael Edward Bell that he had "run through a stop sign for one." That both defendants Strausbaugh and Weidner knew that statement was false at the time it was made.

27.     That in his November 9, 2004 statement to KPD investigators, defendant Strausbaugh admits that Michael Edward Bell stopped at the stop sign at 81st Street and 14th Avenue.

28.     That in his November 9, 2004 statement to KPD investigators, defendant Weidner admits that Michael Edward Bell stopped at the stop sign on 81st Street and 14th Avenue.

29.     Said defendants knew that they were in violation of <u>Terry v. Ohio</u> at the time they stopped Michael Edward Bell.

30.     The unlawful stop of Michael Edward Bell violated his rights under the Fourth and Fourteenth Amendments to the Constitution

31.     The unlawful stop of Michael Edward Bell was immediately connected with and unreasonably created a physically threatening situation and was a cause of Michael Edward Bell's personal injury, pain and suffering and ultimately death.

## UNLAWFUL USE OF FORCE BY CHOKING AND KICKING MICHAEL EDWARD BELL IN CONNECTION WITH THE UNLAWFUL STOP

32.     The Estate of Michael Edward Bell hereby incorporates all preceding paragraphs as if fully set forth herein.

33.     At the time Michael Edward Bell exited the Explorer, the defendant Strausbaugh ordered Michael Edward Bell back into the Explorer, then grabbed Michael Edward Bell by the throat, then by the arm and then physically forced Michael Edward Bell back to the driver's door of the Explorer. At no time during this sequence of events did Michael Edward Bell offer any resistance to defendant Strausbaugh.

34.     The aforesaid conduct on the part of the defendant Strausbaugh was done without a reasonable suspicion that Michael Edward Bell had engaged in or was about to engage in criminal activity.

35.     The defendants Strausbaugh and Weidner physically forced Michael Edward Bell to the ground in the yard in front of Mr. Bell's home. The transcript of the recording of the dialogue between the defendants and Michael Edward Bell establishes that the defendants were kicking Michael Edward Bell.

36.     The aforesaid conduct on the part of defendant Strausbaugh constituted objectively unreasonable force in violation of Michael Edward Bell's rights under the Fourth and Fourteenth Amendments to the Constitution.

37.     The unlawful use of force by defendant Strausbaugh against Michael Edward Bell was immediately connected with and unreasonably created a physically threatening situation and was a cause of Michael Edward Bell's personal injury, pain and suffering and ultimately death.

## UNLAWFUL USE OF TASER BY DEFENDANT STRAUSBAUGH

38.     The Estate of Michael Edward Bell hereby incorporates all preceding paragraphs as if fully set forth herein.

39.     The Kenosha Police Department ("KPD") Policy and Procedure Manual in effect at all times material hereto provides: "The level and amount of force which an officer uses must be reasonably necessary to accomplish the law enforcement objective." The Manual quotes the legal test of "objectively reasonable" set forth in the U.S. Supreme Court case of Graham v. Connor.

40.     That each of the defendant police officers knew at all times material hereto the level and amount of force that would violate the "objectively reasonable" standard and further knew that they would be subjected to civil liability if they violated said standard.

41.     Section VII of the KPD Manual sets forth the official procedures governing the defendant police officers "Use of Less-Lethal Force" and defines the circumstances under which a Conducted Energy Weapon (taser) can be used in a constitutionally reasonable way. The Manual provides: "A. The use of a Conducted Energy Weapon has been authorized by the Kenosha Police Department and may be used by trained personnel when a subject is threatening to actively resist, or is actively resisting an officer and the subject poses an articulable threat of harm to an officer or another person...."

42.     Section VII A. 2. of said Manual provides: "Passive resistance without posing an articulable threat of harm to officers or others does not permit the use of a conducted energy weapon."

43.     That by Memorandum to All Personnel from KPD Captain Grenthner, dated August 10, 2004 the reasonably objective use of the taser deployed by defendant Strausbaugh against Michael Edward Bell was changed to specifically provide that the Taser X26 cannot be used when 1) the subject "simply pulls away from or is not cooperating with

an officer;" 2) "a subject is passively resisting an officer-running away without an articulable threat of harm;" or 3) "a subject is resisting but does not have the ability to harm the officer or another person."

44. The defendant Strausbaugh used a conducted energy weapon on Michael Edward Bell at or about 2:09 a.m. on November 9, 2004 while Michael Edward Bell was restrained by defendants Strausbaugh and Weidner on the ground in the front yard of Michael Edward Bell's residence.

45. In his November 9, 2004 statement to KPD investigators, the defendant Strausbaugh recounts his initial use of a taser on Michael Edward Bell. The defendant Strausbaugh states that after he and defendant Weidner had taken Michael Edward Bell "down" on the front lawn of Michael Edward Bell's home, he decided to use the taser on Michael Edward Bell because of "Bell's strength and our inability to get him under control, to use my tazer (sic) gun on Bell."

46. That by defendant Strausbaugh's own admission, Michael Edward Bell did not pose "an articulable threat of harm to an officer or another person" nor did Bell have "the ability to harm [Strausbaugh] or another person" at the time that defendant Strausbaugh decided to use and did use his taser on Michael Edward Bell.

47. That defendant Strausbaugh's initial use of his taser on Michael Edward Bell violated the KPD Policy and Procedure Manual definition of objectively reasonable use of Less-Lethal Force, the KPD August 10, 2004 Memo to All Personnel and further violated Michael Edward Bell's constitutional rights under the Fourth and Fourteenth Amendments.

48.     That defendant Strausbaugh knew that his use of a taser on Michael Edward Bell was an objectively unreasonable use of force under the circumstances.

49.     Defendant Strausbaugh's aforesaid use of his taser was immediately connected with and unreasonably created a physically threatening situation and was a cause of Michael Edward Bell's personal injuries, pain and suffering and ultimately death.

## UNLAWFUL USE OF TASER BY DEFENDANT KRUEGER

50.     The Estate of Michael Edward Bell hereby incorporates all preceding paragraphs as if fully set forth herein.

51.     Defendant Krueger was equipped with a taser on the morning of November 9, 2004. At or about 2:16 a.m. on November 9, 2004, defendant Krueger performed a "drive stun" to Michael Edward Bell's back. A "drive stun" requires removal of the taser cartridge from the front of the taser so the 50,000 volt discharge would be applied directly from the taser to Michael Edward Bell's back.

52.     At and immediately prior to the "drive stun," defendant Krueger saw that defendants Strausbaugh and Weidner were holding Michael Edward Bell by his arms and had pinned Michael Edward Bell to the ground in the driveway area immediately east of the Bell garage.

53.     On November 9, 2004 defendant Strausbaugh gave a statement to the KPD investigators. In said statement, defendant Strausbaugh stated that at and immediately before the "drive stun" Michael Edward Bell was on the ground in the area immediately in front of the Bell garage with defendant Strausbaugh on Michael Edward Bell's right side and defendant Weidner on Michael Edward Bell's left side.

54.     At the time of defendant Krueger's "drive stun," Michael Edward Bell did not pose an "articulable threat of harm to an officer or another person," and defendant Krueger's "drive stun" of Michael Edward Bell was in violation of the KPD Policies and Procedures Section VII A and the Memorandum of August 10, 2004.

55.     Defendant Krueger knew that his use of a drive stun on Michael Edward Bell was an objectively unreasonable use of force under the circumstances.

56      Defendant Krueger's aforesaid use of his taser was an unreasonable use of force in violation of Michael Edward Bell's constitutional rights under the Fourth and Fourteenth Amendments to the Constitution.

57.     Defendant Krueger's aforesaid use of his taser was immediately connected with and unreasonably created a physically threatening situation and was a cause of Michael Edward Bell's personal injury, pain and suffering and ultimately death.

## UNLAWFUL KICKING OF MICHAEL EDWARD BELL BY DEFENDANTS

58.     The Estate of Michael Edward Bell hereby incorporates all preceding paragraphs as if fully set forth herein.

59.     Defendants Strausbaugh and Weidner held Michael Edward Bell against the ground in the driveway area immediately east of the Bell garage before the arrival of the defendant Krueger.

60.     Witnesses to the aforesaid conduct of defendants Strausbaugh and Weidner described a uniformed officer kicking Michael Edward Bell while he was down on the ground.

61.     That "kicking" is not an accepted use of force under the KPD Policies and Procedures, the State of Wisconsin Department of Justice Law Enforcement Standards Board and constitutes an unreasonable use of force in violation of Michael Edward Bell's constitutional rights under the Fourth and Fourteenth Amendments to the Constitution.

62.     The defendants Strausbaugh and Weidner knew that "kicking" is not an accepted or objectively reasonable use of force under the circumstances and that one of the two named defendants knowingly violated Michael Edward Bell's rights under the Fourth and Fourteenth Amendments to the Constitution by kicking him.

63.     That the unlawful "kicking" of Michael Edward Bell was immediately connected with and unreasonably created a physically threatening situation and was a cause of Michael Edward Bell's personal injury, pain and suffering and ultimately death.

## UNLAWFUL USE OF DEADLY FORCE BY DEFENDANT GONZALES

64.     The Estate of Michael Edward Bell hereby incorporates all preceding paragraphs as if fully set forth herein.

65.     Section II of the KPD Policy and Procedure Manual in effect in November of 2004 expressly advised the defendants that their use of force was governed by the U.S. Supreme Court case of Graham v. Connor which "said that use of force must be 'objectively reasonable' in the given situation."

66.     Section III of the KPD Policy and Procedure Manual in effect in November of 2004 expressly advised the defendants that "deadly force shall never be resorted to until every other reasonable means of apprehension or defense has been exhausted" and that "the justification for deadly force is the immediate threat of death or great bodily harm."

67.    Section XII A. 1. of the KPD Policy and Procedure Manual in effect in November of 2004 expressly advised the defendants that they may use deadly force only "[a]s a last resort in the defense of oneself, when there is reasonable cause to believe that the officer is in imminent danger of death or great bodily harm."

68.    Section XII A. 2 of the KPD Policy and Procedure Manual in effect in November of 2004 expressly advised the defendants that they may use deadly force only "[a]s a last resort in the defense of another person, whom the officer has reasonable cause to believe is being unlawfully attacked and is in imminent danger of death or great bodily harm."

69.    Section XII of the KPD Policy and Procedure Manual in effect in November of 2004 expressly advised the defendants that "whenever safety permits, police officers should identify themselves and state their intent to shoot prior to using a firearm."

70.    The defendant Gonzales shot Michael Edward Bell in the head with a .45 Caliber Smith and Wesson Semi-Automatic.

71.    When defendant Gonzales shot Michael Edward Bell in the head, the defendants Krueger and Strausbaugh had Michael Edward Bell pinned against the driver's side quarter panel of Bell's car with Bell's upper body bent forward with his head pressed against the hood of the car.

72.    At all times material hereto, the defendant Strausbaugh had a .45 caliber Smith and Wesson Semi-Automatic in his holster which was equipped with multiple safeties.

73.    When defendant Gonzales shot Michael Edward Bell in the head, defendant Krueger was bear hugging Michael Edward Bell around the shoulders, defendant

Strausbaugh had hold of Michael Edward Bell's right arm and hand, and defendant Strausbaugh's gun was securely in his holster. That at all times material hereto, from the time defendant Strausbaugh unlawfully stopped and arrested Michael Edward Bell until the time defendant Gonzales shot Michael Edward Bell in the head, defendant Strausbaugh's gun was holstered and the safeties were on.

74.    Before defendant Gonzales shot Michael Edward Bell in the head, said defendant had ample time to independently determine that Michael Edward Bell did not have defendant Strausbaugh's gun and that Michael Edward Bell did not pose an immediate threat of harm to anyone.

75.    At no time before defendant Gonzales shot Michael Edward Bell did he state his intent to shoot. That in the time it took defendant Gonzales to draw his gun, converse with defendants Krueger and Strausbaugh and press his gun to Michael Edward Bell's head, defendant Gonzales could have safely advised Michael Edward Bell that he would be shot if he did not cease his activities.

76.    Michael Edward Bell did not pose an imminent threat of harm to anyone at the time he was shot.

77.    That defendant Gonzales' shooting of Michael Edward Bell was not objectively reasonable under the circumstances and violated Michael Edward Bell's constitutional rights under the Fourth and Fourteenth Amendments to the Constitution.

78. The shooting of Michael Edward Bell was immediately connected with the threatening situation unreasonably created by the aforesaid actions of the defendants and was a cause of Michael Edward Bell's personal injury, pain and suffering and ultimately death.

## CLAIM OF ESTATE OF MICHAEL EDWARD BELL FOR UNCONSTITUTIONAL POLICY AND CUSTOM

79. The Estate of Michael Edward Bell hereby incorporates all preceding paragraphs as if fully set forth herein.

80. The acts of the defendants Strausbaugh, Weidner, Krueger and Gonzales which resulted in the injury and death of Michael Edward Bell were done in accordance with the City of Kenosha and its Police Department's de facto policy, regulation, decision or custom condoning excessive force in executing arrests and/or violating a person's equal protection rights.

81. The defendant, Daniel C. Wade, as Chief of Police of the Kenosha Police Department, at all times material hereto, was and is vested with the authority to make policy for the City of Kenosha on the use of force in making arrests and in the application of various levels of force by KPD police officers including the named defendants.

82. That prior to November 9, 2004, the City of Kenosha, through its official policy maker, Daniel C. Wade, did adopt an official or de facto policy or custom of utilizing excessive force and/or violating a person's equal protection rights in initial stops of citizens, the excessive use of tasers on citizens, the kicking of citizens and the unconstitutional use of deadly force on citizens.

83.     This official or de facto policy or custom of utilizing excessive force and/or violating a person's equal protection rights permitted, encouraged, tolerated or ratified the aforesaid unlawful actions of the defendants Strausbaugh, Weidner, Krueger and Gonzales and was enacted and/or adopted with malicious and reckless disregard and with deliberate indifference to Michael Edward Bell's rights under the Fourth and Fourteenth Amendments to the Constitution.

84.     These aforesaid unconstitutional policies and customs were a result of the failure of the City of Kenosha and its Police Department to adequately train, supervise, and/or discipline its police officers including the named defendant officers.

85.     That the conduct of the defendants, Daniel C. Wade and the City of Kenosha, was a cause of Michael Edward Bell's personal injuries, pain and suffering and ultimate death.

## STATE LAW NEGLIGENCE CLAIM OF ESTATE OF
## MICHAEL EDWARD BELL

86.     The Estate of Michael Edward Bell hereby incorporates all preceding paragraphs as if fully set forth herein.

87.     On or about February 25, 2005, a Notice of Injury and Claim for Damages was filed with the Clerk of the City of Kenosha in full compliance with section 893.80 Wis. Stats. That said Notice of Claim is attached hereto and incorporated by reference as if fully set forth herein.

88.     The City of Kenosha took no action on the claim within 120 days from the service of Notice of Injury and Claim for Damages which inaction resulted in a denial of said claim effective June 25, 2005.

89.     That the aforedescribed conduct of the named defendants constituted negligent conduct.

90.     That the aforesaid negligent conduct was a cause of Michael Edward Bell's personal injuries, pain and suffering and death.

91.     That the Estate of Michael Edward Bell is entitled to damages under Wisconsin law for his personal injuries and pain and suffering from the time of the initial stop until the time of his death.

## STATE LAW NEGLIGENCE CLAIMS OF KIM MARIE BELL

92.     The plaintiff, Kim Marie Bell, hereby incorporates all preceding paragraphs as if fully set forth herein.

93.     The plaintiff, Kim Marie Bell, is the mother of Michael Edward Bell.

94.     The aforesaid negligent conduct of the named defendants was a cause of Michael Edward Bell's death.

95.     The plaintiff, Kim Marie Bell, is entitled to damages under section 895.04 Wis. Stats for the wrongful death of her son.

96.     Kim Marie Bell witnessed her son, Michael Edward Bell being kicked, tased and shot by the named defendant police officers.

97.     That as a result of her witnessing the beating and killing of her son, the plaintiff, Kim Marie Bell, suffered severe and permanent mental and emotional distress and is entitled to damages under Bowen v. Lumbermens Mutual Casualty Co.

## STATE LAW NEGLIGENCE CLAIM OF MICHAEL MARTIN BELL

98. The plaintiff, Michael Martin Bell, hereby incorporates all preceding paragraphs as if fully set forth herein.

99. The plaintiff, Michael Martin Bell, is the father of Michael Edward Bell.

100. The aforesaid negligent conduct of the defendants was a cause of the death of Michael Edward Bell.

101. That the plaintiff, Michael Martin Bell, is entitled to damages under section 895.04 Wis. Stats., for the wrongful death of his son.

## STATE LAW NEGLIGENCE CLAIM OF SHANTAE BELL

102. The plaintiff, Shantae Bell, hereby incorporates all preceding paragraphs as if fully set forth herein.

103. The plaintiff, Shantae Bell, is the sister of Michael Edward Bell.

104. Shantae Bell witnessed her brother Michael Edward Bell being kicked, tased and killed by the defendant police officers.

105. That as a result of witnessing the kicking, tasing and killing of her brother, the plaintiff, Shantae Bell, suffered severe and permanent emotional and mental distress and is entitled to damages under Bowen v. Lumbermens Mutual Casualty Co.

WHEREFORE, the plaintiffs demand judgment against the defendants, jointly and severally, as follows:

      1.    For compensatory and punitive damages in an amount to be determined by a jury.

      2.    For all costs, disbursements and actual attorneys' fees pursuant to 42 U.S.C.A. § 1988, and for other relief as the Court deems just equitable

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.**

Patrick O. Dunphy
Attorney Bar No. 1016947
CANNON & DUNPHY, S.C.
Attorneys for Plaintiffs
595 North Barker Road
P. O. Box 1750
Brookfield, WI 53008-1750
Telephone:    (262) 796-3701
Fax:              (262) 796-3711
Email:           pdunphy@cannon-dunphy.com

Date: 11/9/05

February 25, 2005

## NOTICE OF INJURY AND CLAIM FOR MONEY DAMAGES
## PURSUANT TO § 898.80, WIS. STAT.

**TO:**   **Kenosha Police Department**
**c/o Chief Daniel C. Wade**
1000 55th Street
Kenosha, WI 53140

**Officer Erich R. Strausbaugh**
1000 55th Street
Kenosha, WI 53140

**Officer Albert B. Gonzalez**
1000 55th Street
Kenosha, WI 53140

**Lieutenant David H. Krueger**
1000 55th Street
Kenosha, WI 53140

**Officer Erich S. Weidner**
1000 55th Street
Kenosha, WI 53140

**CC:**   **City of Kenosha**
**c/o City Clerk Jean Morgan**
625 52nd Street
Room 105
Kenosha, WI 53140

**Kevin P. Reak**
**City Attorney- Kenosha**
219 North Milwaukee Street
Milwaukee, WI 53202-5818

## NAME AND ADDRESS OF CLAIMANTS:

**The Estate of Michael Edward Bell**
**By Mr. Michael Martin Bell, Special Administrator**
3317 13th Place
Kenosha, WI 53144

**Mrs. Kim Marie Bell** (mother of Michael Edward Bell)
8310 North 14th Avenue
Kenosha, WI 53143

**Mr. Michael Martin Bell** (father of Michael Edward Bell)
3317 13th Place
Kenosha, WI 53144

**Ms. Shantae Bell** (sister of Michael Edward Bell)
8310 North 14th Avenue
Kenosha, WI 53143

## DATE AND TIME OF EVENT GIVING RISE TO CLAIM:

November 9, 2004 at approximately 2:00 A.M.

## LOCATION OF EVENT GIVING RISE TO CLAIM:

8310 North 14th Avenue
Kenosha, WI 53143

## CIRCUMSTANCES OF EVENTS GIVING RISE TO CLAIM:

1.    Beginning at 2:00 A.M. on November 9, 2004, the Kenosha Police Department, through its officers and employees, above named, engaged in acts of negligence that contributed to the shooting death of Michael Edward Bell. The acts of negligence include the following conduct of individual officers and the Kenosha Police Department.

2.    Officer Albert Gonzalez shot Mr. Bell in the head while Mr. Bell was pinned against the hood of a car parked in Bell's driveway by Officer Strausbaugh, Lt. Krueger and a third officer. At the time Officer Gonzalez shot Mr. Bell, Mr. Bell had his head and chest pinned against the hood of the car and his arms were pinned behind his back. Officer Strausbaugh had control of Mr. Bell's right arm, Lt. Krueger had Mr. Bell in a bear hug from behind and a third officer had control of Mr. Bell's left arm. Officer Gonzalez shot Mr. Bell when Mr. Bell was not a threat to either Officer Gonzalez or any of the officers on the scene. Officer Gonzalez shot Mr. Bell without verifying Mr. Bell had control of Officer Strausbaugh's gun. In point of fact, Officer Strausbaugh admitted that Mr. Bell never removed the gun from Officer Strausbaugh's holster. Officer Gonzalez shot Mr. Bell despite the knowledge that Officer Strausbaugh's holster was designed to impede removal of the gun in a struggle such as the one involving Mr. Bell. Officer Gonzalez had time to determine if Mr. Bell had control of Officer Strausbaugh's gun as Officer Gonzalez had time to move from the front of the car to Mr. Bell's side, time to hear Lt. Krueger question Officer Strausbaugh about the status of his gun, time to independently ask Officer Strausbaugh if Mr. Bell had the gun and time to press the barrel of the gun against Mr. Bell's head so tightly that when Officer Gonzalez pulled the trigger, the gun did not initially fire because the slide could not move forward. The gun did not fire until Officer Gonzalez pulled the gun away from Mr. Bell's head.

3.    Officer Gonzalez negligently shot Mr. Bell in violation of standard and accepted police standards, Kenosha Police Department Policies and State of Wisconsin use of force regulations.

4.    Officer Strausbaugh admits that Mr. Bell never removed the gun from Officer Strausbaugh's holster. Officer Strausbaugh further admits that he had his hand on top of the gun while Mr. Bell was allegedly trying to pull it from Officer Strausbaugh's holster. Despite the knowledge that Mr. Bell had not removed the gun from the holster, Officer Strausbaugh allegedly

- 2 -

told both Lt. Krueger and Officer Gonzalez that Mr. Bell had the gun. Officer Strausbaugh's statement was wrong and was a factor leading directly to the shooting death of Mr. Bell. Officer Strausbaugh's statement was negligently made and in violation of accepted standards for police officers, Kenosha Police Department Policies and State of Wisconsin regulations governing use of force.

5.      Officer Strausbaugh negligently stopped Mr. Bell without probable cause in the 8300 block of 14th Avenue. Officer Strausbaugh admits that Mr. Bell did not speed nor fail to stop for a stop sign when he initially saw Mr. Bell drive past Officer Strausbaugh's squad car. The video taken from Officer Strausbaugh's squad shows that Mr. Bell did not speed or fail to stop for a stop sign. Despite those facts Officer Strausbaugh told Mr. Bell he had stopped him because he "did not make a complete stop." After the shooting death of Mr. Bell, Officer Strausbaugh claimed that he stopped Mr. Bell because he estimated Mr. Bell sped away from the stop sign at 40 m.p.h. based on the tilt of the vehicle's front end and the sound of its engine. That no officer can accurately estimate the speed of a vehicle based on engine noise (engines can be noisy even when stopped) or the tilt of its hood and Officer Strausbaugh's after the fact justification is based on negligent training, negligent estimation of his powers of observation, or fabrication.

6.      Officer Strausbaugh negligently confronted Mr. Bell and caused an unjustified traffic stop to escalate into a physical confrontation and struggle. Officer Strausbaugh had no probable cause to stop Mr. Bell, confront Mr. Bell or to detain Mr. Bell. Despite this fact, Officer Strausbaugh physically grabbed Mr. Bell by the arm and shoulder and took him out of the range of the video camera. While Officer Strausbaugh confronted Mr. Bell outside of camera range and by the side of his squad Officer Strausbaugh claims Mr. Bell walked towards his house at 8310 14th Avenue. At that point Officer Strausbaugh and Officer Weidner negligently arrested Mr. Bell without probable cause, negligently assaulted Mr. Bell by knocking him to the ground and kneeing him.

7.      After throwing Mr. Bell to the ground and repeatedly kneeing Mr. Bell, Officer Strausbaugh then shot Mr. Bell with a taser 3 times for a total of 22 seconds in violation of accepted standards for police officers, Kenosha Police Department Policies and training. Typically, a taser is used for 5 seconds at a time. Officer Strausbaugh's use of the taser for a continuous period of 22 seconds did not give Mr. Bell time to comply, rather this misuse of the taser caused Mr. Bell to react to the pain by fleeing Officer Strausbaugh. Officer Strausbaugh's negligent use of the taser is further evidenced by the fact that Officer Weidner had to advise Officer Strausbaugh to stop tasing Mr. Bell and to drop the taser.

8.      The amount of time the taser was used by Officer Strausbaugh on Mr. Bell is evidence of a continuing failure on the Officer's part and the part of the Kenosha Police Department to implement proper policies and training regarding the use of tasers.

9.      Officer Strausbaugh's negligent use of the taser caused Mr. Bell to jump from the front lawn of his home and run to the side of his home. By the time he used the taser, Officer Strausbaugh admits to knowing Mr. Bell's identity and that he lived at the address where the confrontation was taking place. There is no evidence that at this time Mr. Bell was armed or was a threat to harm anyone.

- 3 -

10.     Officer Strausbaugh struggled with Mr. Bell on the portion of the driveway next to the Bell home. Officer Strausbaugh yelled that Mr. Bell was trying to get his gun even though Officer Strausbaugh admits that Mr. Bell did not have his hand on the officer's gun at this time. Officer Strausbaugh's statement was contrary to the facts as Officer Strausbaugh knew them and contributed to an escalation of the confrontation on his part and the part of Officer Weidner.

11.     Officer Strausbaugh and Officer Weidner fought with Mr. Bell and took Mr. Bell to the ground in the driveway area in front of Mr. Bell's garage. The officers had Mr. Bell on the ground and at this point began to strike Mr. Bell rather than attempt to handcuff him. The officers continued to strike Mr. Bell until Lt. Krueger arrived. At that point, Lt. Krueger negligently delivered another taser charge to Mr. Bell which caused Mr. Bell to jump up from his position on the ground and run towards the hood of the car parked in the driveway.

12.     When Officer Strausbaugh had Mr. Bell on the ground in front of the garage he negligently failed to use accepted and standard empty hand control procedures including but not limited to pepper spray in violation of accepted police practices, Kenosha Police Department policy and State of Wisconsin regulations governing the use of force.

13.     Officer Weidner was negligent in assisting in the initial stop of Mr. Bell, escalating the confrontation by assisting Officer Strausbaugh in knocking Mr. Bell to the ground in front of Mr. Bell's home, assisting Officer Strausbaugh's administration of multiple knee strikes to Mr. Bell, failing to use proper empty hand control procedures to gain control of Mr. Bell, failing to prevent Officer Strausbaugh from his repeated and unjustified use of the taser which exacerbated the situation and caused Mr. Bell to seek to avoid Officer Strausbaugh's repeated use of the taser.

14.     Lieutenant Krueger negligently used his taser when Officers Strausbaugh and Weidner had Mr. Bell under control in the driveway area in front of Mr. Bell's garage. That Lt. Krueger's use of the taser caused Officer Weidner to release Mr. Bell and caused Mr. Bell to jump up and attempt to run away from the taser. Additionally, Lt. Krueger negligently ordered Officer Gonzalez to shoot Mr. Bell in the head. Lt. Krueger did not independently verify that Mr. Bell did not have Officer's Strausbaugh's gun before giving the order and when Mr. Bell was pinned against the hood of his own car by three Kenosha Police Officers.

15.     The Kenosha Police Department was negligent in failing to adopt and implement appropriate policies and procedures regarding the use of tasers and failing to properly train and monitor members of the Kenosha Police Department in the use of tasers. Additionally, the Kenosha Police Department negligently adopted a policy of use of excessive and in this case deadly force by its employees, failing to discipline officers who used excessive force, failed to train officers who have a history of use of excessive force, failed to respond to earlier shootings of Kenosha citizens by Officers of the Kenosha Police Department and was otherwise negligent.

16.     The negligence of the aforesaid officers and Kenosha Police Department all combined to cause the death of Michael Edward Bell.

**ITEMIZATION OF DAMAGES:**

17.     Michael Edward Bell was assaulted by Officers Strausbaugh and Weidner and Lt. Krueger. Their improper use of tasers, knee strikes and other physical strikes caused Michael

- 4 -

Edward Bell great pain and psychological stress. Michael Edward Bell further suffered great pain and suffering when he was shot in the right temple. These damages are damages that belong to his Estate and exceed the statutory maximum of $50,000, the amount which his Estate lists as its statutory damages.

18.     Kim Bell was present as the officers tasered, kneed, struck and shot her son. She is entitled to damages in the full statutory amount of $50,000 under Bowen v. Lumberman's Mutual Casualty Company, 183 Wis. 2d 627, 517 N.W. 2d 532 (1994). In addition, as mother of Michael Edward Bell, Kim Bell is entitled to the full statutory amount of $50,000 for the wrongful death of her son.

19.     Michael Martin Bell is the father of Michael Edward Bell. As father, Michael Martin Bell is entitled to the full statutory limit of $50,000 for the wrongful death of his son.

20.     Shantae Bell is the sister of Michael Edward Bell. She witnessed the improper use of tasers, knee strikes and other physical strikes on her brother. Additionally, she witnessed the shooting of her brother. Shantae Bell is entitled to the full statutory limit of $50,000 under Bowen v. Lumberman's Mutual Casualty.

Dated at Brookfield, Wisconsin, this 25th day of February, 2005.

**CANNON & DUNPHY, S.C.**
Attorneys for Claimants

By: _Patrick O. Dunphy_ _/s/ Authorized Signator._
Patrick O. Dunphy
State Bar No. 1016947

**P.O. ADDRESS:**
595 North Barker Road
P.O. Box 1750
Brookfield, WI 53008-1750
(262) 782-2700

- 5 -

## OATH OF CLAIMANT

I, Michael Martin Bell (father of Michael Edward Bell do swear and declare that I have read the foregoing Notice of Injury and Claim for Money Damages Pursuant to Wisconsin Statute Sec. 893.80 and hereby acknowledge that I am bound by all statements contained therein.

**Michael Martin Bell** (father of Michael Edward Bell)
3317 13th Place
Kenosha, WI 53144

Subscribed and sworn to before me
this 25th day of February, 2005.

Notary Public, State of Wisconsin
My commission expires: _perm._

- 6 -