# KENOSHA POLICE DEPARTMENT
## Supplementary Report

| | | | |
|---|---|---|---|
| DATE OF SUPPLEMENT: 11/11/2004 | DATE & TIME OF INCIDENT: 11/09/04 0211hrs | PAGE NUMBER: 1 of 6 | CASE NUMBER: 04-156477 |

REPORTING OFFICER: Lt. Thomas Vieth #235
TYPE OF INCIDENT: Officer involved shooting

---

**Suspect:**
Name: Michael E. Bell
Address: 8310-14th Av.
DOB: 03/03/83
Sex/Race: M/W
Phone: 658-1219

---

**Directly Involved Officers:**

Name: Lt. Krueger
Ofr. Strausbaugh
Ofr. Weidner
Ofr. Gonzales

---

**Lead Detectives Assigned:**
Name: Det. Strash
Det. Niccolai
Det. Salas
Det. Walton

---

Assisting Detectives: Det. Petersen, Det. Ollila and Det. Greathouse

---

**Assisting Officers:**

Name: Sgt. Edo Maccari
Sgt. Bartholomew
Ofr. DeMario
Ofr. DeJonge
Ofr. Strelow
Ofr. Beller
Ofr. Metzler
Ofr. Luellen
Ofr. Hecker
Ofr. Bennett
Ofr. Sobbe
Ofr. Laudonio

---

Reporting Officer: *[signature]*
2nd Officer:
Supervisor: *Capt Berne 218*

# KENOSHA POLICE DEPARTMENT
## Supplementary Report

| | | | |
|---|---|---|---|
| DATE OF SUPPLEMENT: **11/11/2004** | DATE & TIME OF INCIDENT: **11/09/04  0211hrs** | PAGE NUMBER: **2 of 6** | CASE NUMBER: **04-156477** |

REPORTING OFFICER:   Lt. Thomas Vieth #235

TYPE OF INCIDENT: Officer involved shooting

On 11/09/04 I, R/O Lt. Vieth was called by Capt. Berner at approx. 0220hrs and informed that there had been a police involved shooting at 8310-14th Av. and at the time of this call there was not much more information available. I was requested to respond to the scene as the supervising detective. I arrived at the scene at approx. 0245hrs. and observed that marked squads had the roadway blocked near 84th St. and again at 83rd St. and the area directly around 8310-14th Av. and all the way across the street to the east was blocked off with crime scene tape. Inside the tape I noticed a green Ford Explorer with its front doors open parked facing S/B on 14th Av. I also noticed a marked squad parked behind the Ford in a manner consistent with their positioning during a traffic stop and a white unmarked supervisor's squad parked facing S/B on the east side of the street. The med. units had already left the scene prior to my arrival. Sgt. Maccari was on the scene and explained briefly what occurred and said that he would supervise protecting the scene. I also learned that the involved suspects mother and sister had observed what had happened. Sgt. Maccari explained that they were currently still in the house with Ofr. DeMario and no statements had been obtained from them yet. They were then allowed to go to the hospital prior to any statement being taken so they could be with their son/brother. A/C Pataska was already on the scene and Capt. Berner arrived shortly thereafter. We then were taken through the scene by Lt. Krueger, Ofr. Weidner and Officer Beller. Lt. Krueger and Ofr. Weidner were directly involved in the incident prior to the shooting and Officer Beller was the first officer on the scene after the shooting was over. Officer Gonzales, who fired the shot and Ofr. Strausbaugh, who was the original involved officer that attempted to arrest Bell, had already left the scene prior to my arrival. According to Lt. Krueger he was on patrol when he heard an officer on the police radio calling for help and he could tell from the sound of the voice that he was in distress and needed assistance. Dispatch advised the officers were in the 8300blk of 14th Av. Lt. Krueger then responded with the lights and siren activated. As Lt. Krueger was almost there he heard an officer scream on the radio that they were in the backyard. On Lt. Krueger's arrival he observed two marked squads with their emergency lights on but he still wasn't sure exactly where the officers were. Officer Gonzales arrived on the scene shortly after Lt. Krueger. Lt. Krueger ran towards the backyard at 8310-14th Av. and could hear a woman screaming. He then ran towards where this woman was and observed Officers Strausbaugh and Weidner on the ground in an intense struggle with a subject. According to Lt. Krueger it appeared as if both officers were exhausted at this point as they were holding onto and wrestling with the subject. Lt. Krueger said that he then removed his Taser and performed a drive stun on the suspects exposed midsection in the rib area. Lt. Krueger said that after the drive stun the suspect got to his feet and "bullrushed" Ofr. Strausbaugh against a car in the driveway. Lt. Krueger then tried to put a bear hug on the suspect as Ofr. Strausbaugh was screaming "He's got my gun" repeatedly and "Oh, God, he's got my gun" in a high pitched and extremely distressed voice like he had never heard before. Lt. Krueger said that he then noticed Ofr. Gonzales in front of the vehicle and Lt. Krueger said "If he's got your

| Reporting Officer: | 2nd Officer: | Supervisor: |
|---|---|---|
| *[signature]* | | Capt. Berner 218 |

# KENOSHA POLICE DEPARTMENT
## Supplementary Report

| | | | |
|---|---|---|---|
| DATE OF SUPPLEMENT: 11/11/2004 | DATE & TIME OF INCIDENT: 11/09/04  0211hrs | PAGE NUMBER: 3 of 6 | CASE NUMBER: 04-156477 |
| REPORTING OFFICER: | Lt. Thomas Vieth #235 | | |

TYPE OF INCIDENT: Officer involved shooting

gun we are going to have to shoot him" and again asked if he had Ofr. Strausbaugh's gun. According to Lt. Krueger, Ofr. Strausbaugh continued to scream that "He's got my gun" and at this time Lt. Krueger said he told Ofr. Gonzales to shoot and while Ofr. Gonzales almost instantaneously fired one shot into the suspects head. Lt. Krueger said that as soon as the shot was fired the suspect stopped fighting and slumped against the car. Lt. Krueger immediately radioed that he needed rescue to respond to their location right away.

Shortly after this briefing District Attorney Jambois arrived on the scene. While he was being briefed on the incident I used a cell phone and called Detective's Strash and Niccolai in as the lead detectives to handle this case. I was also informed by Capt. Berner that the KPD's Criminalist Todd Thorne was being called to the scene.

A short while thereafter I, along with Capt. Berner and DA Jambois cleared the scene and went to Kenosha Hospital and Medical Center, where the involved suspect, Michael Bell (listed on page 1) had been transported. Upon arrival at the hospital I observed Sgt. Flahive on scene as was Ofr. DeMario. Bell was being treated by medical staff in treatment room 4 and Flight for Life was also on the scene preparing Bell for transport to Froedtert hospital's trauma unit. I was informed by a nurse in the ER that Bell's condition was critical. Shortly thereafter myself, Capt. Berner and DA Jambois went to a waiting room to speak with William Bell's mother Kim and his sister Shantae, who witnessed the shooting. We Found Ofr. DeMario was just outside the waiting room and Kim and Shantae were in the room with Hospital Chaplin Brian Henry. DA Jambois conducted the interview. During this interview both Kim and Shantae said they were awakened by the sound of the fight outside their home. Kim said that she went outside and noticed two people were on top of her son fighting and kicking him. She told them she was going to call the police and tried to stop them and it was at that time she noticed the other two were the police. She tried to intervene and tell them not to hurt him but was told to stay back. Kim said that she heard someone yell that "He's got my gun" and she knew that Michael didn't carry a gun so it must have been a police officer that yelled. After hearing the person yell "He's got my gun" she heard a gunshot and then knew Michael had been shot. Shantae, who was sitting on a couch talking on a cell phone but listening to what her mother said agreed with her mothers description of the events but said that she thought she heard the person yell "He's going for my gun" prior to the shot being fired. Both Kim and Shantae appeared very upset at this time and I explained that we would need a more complete written statement and they both agreed to do this.

I then went outside and called both Detective's Strash and Niccolai on the police radio and had them respond to the hospital for this statement. Prior to the statement being taken Michael was taken out of the treatment room for transport to Froedtert by the Flight for Life staff. Upon seeing Michael both Kim and Shantae became extremely upset and Kim collapsed on the floor. They were again allowed to go with family members to Froedtert to be with Michael prior to any formal statements being taken.

| Reporting Officer: | 2nd Officer: | Supervisor: Capt Berner 218 |
|---|---|---|

# KENOSHA POLICE DEPARTMENT
## Supplementary Report

| | | | |
|---|---|---|---|
| DATE OF SUPPLEMENT: **11/11/2004** | DATE & TIME OF INCIDENT: **11/09/04  0211hrs** | PAGE NUMBER: **4 of 6** | CASE NUMBER: **04-156477** |

REPORTING OFFICER: Lt. Thomas Vieth #235
TYPE OF INCIDENT: Officer involved shooting

We then cleared the hospital and returned to PSB. Once there I called in Detectives Salas and Walton to also assist in this investigation. I then assigned each Detective to work with each of the officers involved. Detective Strash was assigned to Ofr. Strausbaugh, Detective Niccolai was assigned to Lt. Krueger, Detective Salas was assigned to Officer Gonzales and Detective Walton was assigned to Officer Weidner. Each detective then took statements from each involved officer independently of each other. See each Detectives reports for details.

I then received a call from Assistant Medical Examiner Rick Berg. Berg explained that at 0449hrs Dr. Severson at Froedtert Hospital declared that Michael Bell had died as the result of the gunshot. Berg explained that Bell's body would be brought to the Waukesha Co. Medical Examiners office for an autopsy but said that the exact time had not yet been established.

I then obtained tapes containing the Kenosha Police Department radio traffic during the time of this incident. Kenosha Fire Department tapes were also obtained from dispatch. Clerk Typist Heidi Konz was later assigned to transcribe the KPD radio traffic tape. See attached. I also obtained a copy of the download of Ofr. Strausbaugh's in car squad video. I also learned in dispatch that during the time of this incident there were no other calls received concerning shots fired or any suspicious activity in the area.

I also learned that the suspect in this case was currently out on bond for a Felony drug case. During that incident Michael Bell also resisted officers and had to be pepper sprayed prior to being taken into custody. I then requested that Det. Petersen and his canine partner Kilo respond to the scene and conduct a search with the drug dog. This was done with no drugs found in the vehicle. See Det. Petersen's report for details.

During the course of the morning I received a call from Sgt. Maccari. Sgt. Maccari explained that the family had now returned from the hospital in Milwaukee and he was wondering if I would allow them to re-enter their home. I was told that the evidence techs were done processing the front of the house and were working in the rear of the home. I explained that I would allow this as long as Sgt. Maccari escorted the family into the front door of the home and they were not allowed to exit the home and go into the area behind the house where the evidence personnel were working.

After the detectives completed the written statements from the involved officers each officer was brought back to the scene independently for a walk through of the events as they remembered them. Prior to the walk through myself and Det. Walton knocked on the door and again spoke with Kim and Shantae Bell and asked them if they would now be able to supply us with statements concerning this incident. At this time I noticed several friends and family members inside the home. Kim Bell was very upset and said that the police were a bunch of murderers and the only way she would talk to us is through her attorneys. I again explained that we were sorry for her loss. Kim then asked us for our cards and both myself and Det. Walton gave Kim our cards. The entire family was somewhat hostile at this time, while asking several questions about why things happened the way they did and why we didn't shoot to wound Michael and

| Reporting Officer: | 2nd Officer: | Supervisor: |
|---|---|---|
| | | Capt. Bernard 18 |

RECORDS BUREAU

# KENOSHA POLICE DEPARTMENT
## Supplementary Report

| | | | |
|---|---|---|---|
| DATE OF SUPPLEMENT: **11/11/2004** | DATE & TIME OF INCIDENT: **11/09/04 0211hrs** | PAGE NUMBER: **5 of 6** | CASE NUMBER: **04-156477** |

REPORTING OFFICER: Lt. Thomas Vieth #235
TYPE OF INCIDENT: Officer involved shooting

things along this line. I attempted to answer most of the questions as best I could. I then explained what we were going to be doing and asked them to remain in the house, which they did. Each officer's reenactment was then done for their detective. Myself, Capt. Berner, Capt. Genthner and Criminalist Thorne were also present during these reenactments. Each officer's reenactment was very similar to the statements that they supplied. Each officer explained where they were at the time the shot was fired and at that time Thorne placed a numbered marker in that location, to be photographed later. See also the detective's reports for additional details.

After the reenactments I returned to PSB. While there I received a printout of the recorded firing data on two Tasers that were used during this incident. I found that Officer Strausbaugh's taser had been activated three times. The first, according to the internal clock on the taser occurred at 02:08:59 with the duration being 11 seconds. The second immediately followed at 02:09:10 and had duration of 6 seconds. The last immediately followed at 02:09:16 and had a duration of 5 seconds.

According to the recorded firing data on Lt. Krueger's taser it was fired once at 02:16:30 with the duration being 5 seconds.

It should be noted that according to Sgt. Miskinis the times on the recorded firing data logs are actually the time that the firing ENDS and shows the duration of the time it was fired prior to that point. So to find the actual time of the firing you have to subtract the duration of the time from that on the printout.

During the early afternoon hours I was also notified that Michael Bell Sr. was at the counter of the police department and wanted to speak with someone concerning the shooting. I then went to the counter area to speak with Mr. Bell, who was alone at this time. Mr. Bell was obviously concerned and wanted to know the truth about what had happened to his son. I expressed my sincere condolences to Mr. Bell and his family concerning the tragic loss of his son. We then sat on a bench in the lobby and had a discussion. During the discussion Mr. Bell told me how he knew Michael hated the police and authority figures and he knew of some of Michaels past problems with the police, and added that he was sure there were probably others that Michael was too embarrassed to tell him about. He thought this dislike for authority was possibly because Mr. Bell himself was a retired Lt. Col. in the Air Force. Mr. Bell went on to say that approximately two weeks ago he and Michael were taking a trip to California and while going through the security check point at the airport Michael got upset and refused to take off his shoes when the airport screeners requested him to do so. Mr. Bell went on to say that the security had to request backup at that time to handle Michael as he was very argumentative with the authorities at the airport. Mr. Bell also said he knew Michael was very strong and fast and he could see Michael causing problems for the police. Mr. Bell went on to tell me about how when they got to California Michael decided he wanted to go to the top of a mountain so he got a mountain bike and rode to the top without any problem, and this was no small mountain. Mr.

| Reporting Officer: | 2nd Officer: | Supervisor: Capt. Berner 218 |
|---|---|---|

# KENOSHA POLICE DEPARTMENT
## Supplementary Report

| | | | |
|---|---|---|---|
| DATE OF SUPPLEMENT: 11/11/2004 | DATE & TIME OF INCIDENT: 11/09/04  0211hrs | PAGE NUMBER: 6 of 6 | CASE NUMBER: 04-156477 |

REPORTING OFFICER:  Lt. Thomas Vieth #235
TYPE OF INCIDENT: Officer involved shooting

Bell was obviously emotional and confused as to how this incident occurred. He told me that he had tried to get Michael into alcohol treatment on 4 occasions and wondered if Michael had been drinking prior to the incident. I explained that at that time I did not know the results of any toxicology reports that had been done on Michael. Mr. Bell explained how he was concerned because his ex-wife had told him that four officers were beating Michael and he was handcuffed when he was shot. I explained that nothing in my investigation up to this point would indicate that this was true. He did also mention that his wife had told him during this conversation that she had heard the officers yelling "He's got my gun" prior to the shot being fired. During our conversation we covered several different items in our lives and the events that occurred. It was my hope that after our conversation ended Mr. Bell had a better grasp on the facts concerning the death of his son. It should be noted that I have spoken with Mr. Bell several times since this original meeting and I have tried to keep him up to date and answer some of the questions with facts that I couldn't answer at the time of this original meeting.

After this meeting I also obtained a copy of the medical reports for Kenosha Hospital concerning their treatment of Michael Bell. It appears from their records that at the time of this incident Michael had a blood alcohol content of .165%, which is more than twice the legal limit of .08. It was decided that a canvass of the neighborhood would be conducted to see if any of the neighbors saw or heard anything during this incident. This was done by Second Shift Detectives Greathouse and Ollila. See their reports for details of the canvass.

The folder containing the tapes and video download was given to Capt. Berner for his review.

At the time of this report the investigation into this shooting is continuing.

| Reporting Officer: | 2nd Officer: | Supervisor: Capt. Berner 218 |
|---|---|---|