```
                                                              1
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF WISCONSIN
 3     * * * * * * * * * * * * * *
 4   ESTATE OF MICHAEL EDWARD BELL, by Special
     Administrator Michael Martin Bell, KIM MARIE
 5   BELL, MICHAEL MARTIN BELL, and SHANTAE BELL,
 6                 Plaintiffs,
 7     vs.                      Case No. 05-C-1176
 8   OFFICER ERICH R. STRAUSBAUGH, OFFICER ERICH S.
     WEIDNER, LIEUTENANT DAVID H. KRUEGER, OFFICER
 9   ALBERT B. GONZALES, KENOSHA POLICE DEPARTMENT,
     CITY OF KENOSHA,
10
                   Defendants.
11
       * * * * * * * * * * * * * *
12
13
             VIDEOTAPED DEPOSITION OF TODD THORNE
14
            TAKEN AT: Kenosha City Hall
15          LOCATED AT: 625 52nd Street
                        Kenosha, WI
16
                        May 31, 2007
17                1:24 p.m. to 3:05 p.m.
18              REPORTED BY ANITA K. FOSS
             REGISTERED PROFESSIONAL REPORTER
19
20
       * * * * * * * * * * * * * *
21
                  RAY REPORTING, INC.
22                Voice (414) 347-5599
                   Fax (414) 347-1166
23              Toll Free (800) 472-0445
                  www.rayreporting.com
24                Depos2Bdone@aol.com
                  RayReporting@aol.com
25
```

PLAINTIFF'S EXHIBIT 10

1  I knew that. One of the first questions I ask
2  the on-scene supervisor, are they aware of
3  anything that's been removed. Obviously, the
4  body was gone. Is there anything else that's
5  been removed, and they'll either say yes or no
6  and what it is. And I believe -- I believe
7  that that's when I found that out. But I'm not
8  completely positive. It's been a long time.
9  Q  Who was the officer in charge when you arrived
10    at the scene?
11 A  It would have been Maccari. Lieutenant
12    Maccari.
13 Q  Is Lieutenant Maccari the person you likely
14    would have asked if anything had been changed
15    in the scene prior to your arrival?
16 A  You know what, it could have been Lieutenant
17    Maccari, it could have been officer Dan
18    DeJonge, who was an evidence technician that
19    evening.
20 Q  What about Beller, Officer Beller? And the
21    only reason I mention him is because in Exhibit
22    82, it says that "P.O. Beller walked me through
23    the scene."
24 A  Could have been Beller as well.
25 Q  But in any event, while you were still at the

1   scene you learned that Officer Weidner had
2   removed the handcuffs from the position they
3   had been in front of the WaveRunners?
4 A I don't like the word removed. I would say
5   resecured would be a better word. Removed adds
6   a little bit of facetiousness there, and I
7   don't think that was the case at all.
8 Q Where was Officer Weidner when you learned that
9   he had repositioned or resecured the handcuffs?
10 A Where was he when he did it or where was he --
11 Q Where was he when you learned that he had done
12   that?
13 A I have no idea. He wasn't on scene.
14 Q He was not at scene?
15 A Correct.
16 Q At any time during the course of your
17   investigation did you ask Officer Weidner to
18   return the handcuffs to you?
19 A No.
20 Q Do you know if he returned the handcuffs to
21   anybody as part of the collection of evidence?
22 A I have no idea. I don't believe so.
23 Q Do you know if the handcuffs were ever tested
24   for DNA?
25 A I don't believe so.

| | | |
|---|---|---|
| 1 | Q | Is there a reason why you didn't ask Officer |
| 2 | | Weidner to give you the handcuffs? |
| 3 | A | 'Cause it was my understanding they were never |
| 4 | | able to make contact with the handcuffs to |
| 5 | | Mr. Bell or anybody else; therefore, the |
| 6 | | probative value of that would be zilch. |
| 7 | Q | It would be zilch if, assuming that Officer |
| 8 | | Weidner -- or at least the information you had |
| 9 | | was accurate; correct? |
| 10 | A | Correct. |
| 11 | Q | Is there a way that you could have objectively, |
| 12 | | independently verified whether or not the |
| 13 | | officer's information to you was accurate, by |
| 14 | | testing? |
| 15 | A | Could have I have taken those handcuffs and |
| 16 | | tested them for DNA? Absolutely. |
| 17 | Q | You chose not to because of what the officers |
| 18 | | told you? |
| 19 | A | Absolutely. |
| 20 | Q | Is that what you were taught in forensics, that |
| 21 | | if the officer tells you something, that you |
| 22 | | take that as true and don't do anything to |
| 23 | | objectively verify the veracity of their |
| 24 | | statement? |
| 25 | A | Again, the probative value is what I'm looking |

1      at. And I do not -- I don't have any reason to
2      believe that the handcuffs were in contact with
3      Mr. Bell, especially after the autopsy, which
4      was a day-and-a-half later.
5 Q Were you aware of the fact that one of the
6      witnesses interviewed by the police department
7      did say that Michael Bell had handcuffs on his
8      wrist?
9 A Nope.
10 Q If you had known that would you have taken the
11      handcuffs from Officer Weidner and had them
12      examined?
13 A Yes.
14 Q Whose obligation was it, if anybody's, to tell
15      you that during the course of the investigation
16      by the Kenosha police department, they learned
17      that there was at least one witness who said
18      that handcuffs were on Mr. Bell's wrists?
19      MR. REAK: Object to the form of the
20      question.
21      THE WITNESS: I don't know that it's
22      anybody's obligation to tell me that.
23      BY MR. DUNPHY:
24 Q Well, as an investigating officer doing
25      forensic work, would you have liked to have